# IN THE SUPREME COURT OF CALIFORNIA

VADIM GOROBETS,

Plaintiff and Appellant,

v.

JAGUAR LAND ROVER NORTH AMERICA, LLC,

Defendant and Respondent.

S287946

Second Appellate District, Division Two
B327745

Los Angeles County Superior Court
19STCV11540

August 6, 2026

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Groban, Evans, and Feuer[*] concurred.

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

GOROBETS v. JAGUAR LAND ROVER NORTH AMERICA, LLC

S287946

Opinion of the Court by Corrigan, J.

Generally, the right to recover costs at the conclusion of a civil action belongs to the "prevailing party," as defined by statute. (Code Civ. Proc., § 1032, subd. (b).)[1] To incentivize the early settlements of lawsuits, section 998 modifies this general rule and penalizes a party who rejects an opponent's valid statutory offer to compromise (998 offer) by shifting the liability for costs when the rejecting party "fails to obtain a more favorable judgment or award" after further litigation. (§ 998, subds. (c)(1), (d), (e).) Under a well-established test developed by our lower courts, a 998 offer is valid for cost-shifting purposes only if its terms are sufficiently certain or specific to permit the offeree and the trial court to assess its value as of the time the offer was made. (*Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 698 (*Valentino*); *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 (*Fassberg*).)

Section 998 permits a party to make a subsequent offer after a previous one has been rejected. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1017 (*Martinez*).) It does not directly address the possibility of presenting two sets

_____

[1] See Code of Civil Procedure section 1032, subdivision (a)(4) (defining " '[p]revailing party' "). All undesignated statutory references are to the Code of Civil Procedure.

of alternative terms in a single offer, as occurred here. The specific question in this case is whether a single 998 offer that presents two independent and alternative sets of terms and grants the offeree the right to accept by choosing between them is categorically nonconforming because an offer structured in that way lacks sufficient certainty. We hold that such a 998 offer can be valid so long as (1) the offer is structured so that it clearly presents the alternatives available to the offeree, and (2) at least one of the two independent sets of terms is sufficiently certain to permit an accurate valuation at the time the offer is made. Once validity is established, the court must determine whether section 998 cost shifting has been triggered by asking whether the party who rejected the 998 offer "fail[ed] to obtain a judgment or award more favorable" than the highest value, valid alternative proposed. (*Id.*, subds. (c)(1), (d), (e).)

We reject the Court of Appeal's analysis and conclusion that alternative-choice offers are inherently uncertain, making them categorically prohibited by section 998. We affirm that portion of the judgment upholding the trial court's award.

## I. BACKGROUND

### A. *The Lease Agreement and Lawsuit*

In October 2015, plaintiff Vadim Gorobets signed a lease agreement with defendant Jaguar Land Rover North America, LLC, for a new 2016 Land Rover LR4 priced at $59,474. The lease provided for 42 monthly payments totaling $32,502.54, with an option to purchase for $37,300.14 at lease end. During the first six months, the vehicle displayed major "defects and nonconformities," including "steering, suspension, engine, exterior, electrical, structural, transmission, HVAC, interior and brake[] defects." Despite being given adequate opportunity,

2

defendant's repair facilities were unable to resolve the issues, and the problems persisted. After defendant failed to replace the vehicle promptly or make restitution in accordance with Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.; the Act or Song-Beverly Act),[2] plaintiff sued for express and implied breach of warranty, and breach of the duty to return the vehicle from service without defects within 30 days.[3] Plaintiff sought restitution, incidental and consequential damages, civil penalties, and prejudgment interest, along with attorney fees and costs.

## B. Proceedings Before the Trial Court

On October 15, 2020, defendant made a section 998 offer proposing two alternative sets of settlement terms.[4] The first choice was a simple lump-sum payment. Defendant would agree to pay $85,000 for the vehicle's return with a clear title. The second choice was less straightforward. Defendant agreed to "reimburse" plaintiff for expenses he incurred in several categories that largely track restitution remedies available under the Act. These amounts included "transportation"

---

[2] The Song-Beverly Act imposes an "obligation" on a car manufacturer "to 'promptly' repurchase or replace a defective vehicle it is unable to repair." (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 971.) The buyer of the defective vehicle may "elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle." (Civ. Code, § 1793.2, subd. (d)(2).)

[3] The complaint also named as defendant Terry York Motor Cars, Ltd., doing business as Land Rover of Encino, (the company where he leased the vehicle and brought it in for repairs), but plaintiff later dismissed the dealership.

[4] This was defendant's second 998 offer. Neither party contends that the first was a valid statutory offer of compromise.

charges, "manufacturer-installed options," "loan interest, rental charges, and any collateral charges such as sales tax, license fees, registration fees, and other official fees."  Although the Act permits the manufacturer to apply a mileage use offset (see Civ. Code, § 1793.2, subd. (d)(2)(C)), defendant offered to waive it. Additionally, defendant agreed to pay any "incidental or consequential damages" to which plaintiff was entitled under Civil Code section 1793.2, as well as any amount owed on a loan or any other amount necessary for the return of the vehicle with a clear title.  However, the terms of the second alternative required plaintiff to itemize and provide proof of all claimed reimbursement amounts.  If there was a dispute as to plaintiff's "legal entitlement and/or the amounts recoverable . . . after submission of the itemization and proof of same," defendant would agree to pay any undisputed amounts.  The parties would then "allow the Court to determine" what additional amount was called for by the offer, "either by motion, bench trial, jury trial, expedited jury trial under Rule 3.1545 of the Rules of Court, or by referee under Code of Civil Procedure § 638." Plaintiff would choose the dispute resolution process and bear "the burden of proof by a preponderance of the evidence for legal entitlement and amount of damages sought."

Both alternatives provided defendant would also waive its own costs and pay either $7,500 for plaintiff's attorney fees and costs or, at plaintiff's election, have the reasonable amount for fees and costs be determined by the court pursuant to the Act, with plaintiff designated as the prevailing party. (See Civ. Code, § 1794, subd. (d).)  Regardless of the alternative chosen, plaintiff would request dismissal of the entire action with prejudice within five business days after receiving the payments.  The last page of the 998 offer included a table listing the terms of each

alternative. To accept the offer, plaintiff was required to check a box next to the alternate set of terms selected and sign the form. In the end, plaintiff chose neither alternative and allowed the 998 offer to expire.

A jury subsequently awarded plaintiff a net total of $76,155.27 in damages.[5] Following entry of judgment, both sides filed to recover costs and to strike or tax those sought by the other party. As the prevailing party, plaintiff sought to recover $76,118.32 in general costs and $543,413.34 in attorney fees as provided by the Act.[6] Defendant contended plaintiff was not entitled to postoffer costs because he rejected its valid 998 offer and then failed to achieve a more favorable outcome.

---

[5] Specifically, the jury awarded $69,576.65 for plaintiff's base payments, $1,947.82 in finance charges, $3,681.12 in taxes and fees, and $4,828 in incidental damages. It reduced the award by $3,878.32 for vehicle usage. The jury did not find defendant willfully violated the Act, so awarded no penalties.

[6] Section 1032 provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) The " '[p]revailing party' " is "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief . . . , a defendant as against those plaintiffs who do not recover any relief against that defendant," or, in other situations, the party the court determines to be the prevailing party in its discretion. (§ 1032, subd. (a)(4).) Section 1033.5 sets out the items that are "allowable as costs under Section 1032." (§ 1033.5, subd. (a).) Among those items are attorney fees, when authorized by statute. (§ 1033.5, subd. (a)(10)(B).) The Act authorizes a court to award "attorney's fees based on actual time expended" to a prevailing buyer in an action which, like this one, is brought under Civil Code section 1794, subdivision (a). (Civ. Code, § 1794, subd. (d).)

Defendant sought to recover $14,612.17 of its postoffer costs and limit plaintiff to his pre-offer sums. Plaintiff challenged defendant's 998 offer as invalid because its terms lacked sufficient specificity to permit accurate valuation.

The trial court ruled defendant's 998 offer was valid because "[a]t the time the offer was made, Plaintiff was provided with a sufficiently specific and unconditional offer of $85,000.00, which he chose not to accept." In an amended judgment incorporating the general cost and attorney fee awards, the trial court imposed the cost-shifting penalty and limited plaintiff to his pre-offer costs of $5,238.22 and pre-offer attorney fees of $22,492. It awarded defendant its postoffer costs of $14,591.77.[7] Plaintiff timely appealed. The Court of Appeal affirmed the trial court's ultimate awards as explained below.

### C. Court of Appeal Opinion

The Court of Appeal construed defendant's proposal as constituting two "simultaneous offers."[8] (*Gorobets*, *supra*, 105

---

[7] As the Court of Appeal observed, because of a typographical error, the court's final order awarded plaintiff $45 more than the figure in its cost order. The parties do not challenge this windfall. (*Gorobets v. Jaguar Land Rover North America, LLC* (2024) 105 Cal.App.5th 913, 924, fn. 6 (*Gorobets*).)

[8] A note as to terminology. As explained in greater detail below, referring to the 998 offer here as *two* "simultaneous offers" is both inaccurate and potentially confusing. (See *post*, pp. 12–14, 18–19.) It is better understood as a *single* offer proposing two distinct sets of alternative terms and permitting the offeree to choose between them. (*H.S. Crocker Co. v. McFaddin* (1957) 148 Cal.App.2d 639, 645 (*H.S. Crocker*); see also 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 137, p. 177; Rest.2d Contracts, § 30, com. c, p. 85; 1 Williston

Cal.App.5th at p. 927.) The court acknowledged that " '[n]othing in the wording of section 998 prevents a [party] from making more than one compromise offer' to the same opposing party." (*Ibid.*) It went on to observe, however, that: "[t]ypically, litigants make multiple offers seriatim — that is, one at a time; when they do, the most recent offer is usually the operative offer that controls for purposes of evaluating whether the subsequent judgment is more or less favorable." (*Ibid.*) The majority held that section 998 does not allow a party to make what it characterized as "multiple offers to the same party *at the same time*." (*Ibid.*)

Despite its conclusion that the alternative-choice offer here actually constituted two separate offers, the court went on to determine that the second alternative presented in this case was not sufficiently amenable to valuation, thus rendering it "independently" invalid. (*Gorobets*, *supra*, 105 Cal.App.5th at p. 936; see *id.* at pp. 930–934.) It then concluded it was left to consider only the one *valid* lump sum alternative, which the parties did not dispute was independently capable of fair valuation, and which plaintiff did not exceed at trial. (*Id.* at pp. 934–935.) As a result, it affirmed the trial court's order imposing the cost-shifting penalty on plaintiff who rejected

on Contracts (4th ed. 2022) § 4:22, pp. 532–539.) Defendant occasionally refers to it as a "multi-option" offer, but this too is potentially confusing because, under contract law, an "option" can denote: "An offer that is included in a formal or informal contract; esp., a contractual obligation to keep an offer open for a specified period, so that the offeror cannot revoke the offer during that period." (Black's Law Dict. (12th ed. 2024) p. 1316, col. 2.) Therefore, except when quoting the courts below or the parties, we instead use the shorthand term "alternative-choice offer" or "alternative-choice 998 offer."

defendant's 998 offer. (*Id.* at p. 936.) A partial dissent concurred in the holding that a 998 offer is "not 'sufficiently certain if it consists of two offers made at the same time to the same party and leaves it to the offeree which offer to accept.' " (*Id.* at p. 937 (dis. opn. of Ashmann-Gerst, Acting P. J.).) The dissent would have ended the analysis there and reversed the trial court order awarding postoffer costs to defendant. (*Ibid.*) It declined to join the majority's other conclusions. (*Ibid.*)

We affirm the ultimate judgment but disapprove the majority's analysis and holding that section 998 categorically prohibits making a single offer with two sets of alternatives.

## II. DISCUSSION

The sole question presented here is whether a settlement offer that permits an offeree to choose between two distinct sets of settlement terms as a form of acceptance can qualify as a valid offer for cost-shifting purposes under section 998.[9] We hold that such an offer, which meets the statutory provisions and is sufficiently clear to permit valuation, can be valid, so long as it satisfies the requirements set out here.

### A. *The Statutory Language of Section 998 Does Not Prohibit Alternative-choice Offers*

The right to recover civil litigation costs is governed by statute. (*Madrigal v. Hyundai Motor America* (2025) 17 Cal.5th 592, 602 (*Madrigal*).) Generally, section 1032, subdivision (b)

---

[9] Neither side sought review on the other question addressed by the Court of Appeal regarding the validity of the dispute-resolution alternative presented in defendant's 998 offer. Thus, we assume without deciding that this second settlement alternative is independently invalid under section 998.

entitles a "prevailing party" to recover its costs, and section 1033.5 identifies the allowable cost items, including attorney fees that are authorized by statute. (See p. 5, fn. 6, *ante*.) Section 998 significantly modifies this general rule. As relevant here, section 998 provides that a plaintiff who does not accept a defendant's valid offer of compromise, then fails to obtain a more favorable judgment or award at the conclusion of the litigation "shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) The statute also grants the court discretion to order the plaintiff to pay defendant's postoffer expert witness fees. (*Ibid*.) The purpose of this "carrot and stick" approach is to promote early pretrial settlements, "avoid the time delays and economic waste associated with trials[,] and . . . reduce the number of meritless lawsuits." (*Martinez*, *supra,* 56 Cal.4th at p. 1019.)

Whether section 998 permits an offer of compromise that proposes a choice between two sets of alternative settlement terms is a question of statutory interpretation, which we review de novo. (*Madrigal*, *supra*, 17 Cal.5th at p. 602.) "When interpreting a statute, ' "[w]e first examine the statutory language, giving it a plain and commonsense meaning." [Citation.] We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. [Citation.] If the language is unambiguous, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Ibid*.)

"Section 998 addresses some, but not all, of the aspects of the offer and acceptance process." (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 279 (*T. M. Cobb Co.*).) For instance, the statute provides that a qualifying offer must be in writing and served on the offeree at least 10 days before a trial or arbitration. (§ 998, subd. (b).) It must also include "a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the accepting party." (*Ibid.*) Nothing in this statutory language prohibits a valid offer from proposing two alternative sets of terms, either of which an offeree may choose to accept.

Plaintiff nonetheless argues that by phrasing its requirement as "a statement of *the* offer" (§ 998, subd. (b)) rather than using the plural term "offers," the Legislature indicated an intent to prohibit alternative-choice offers. As plaintiff readily concedes, however, section 17, subdivision (a) makes clear that "[w]ords used in the code in . . . [t]he singular number includes the plural and the plural number includes the singular." (See *Gorobets, supra*, 105 Cal.App.5th at p. 928.)

Undeterred, plaintiff claims the statutory language contains other indications that the Legislature intended to bar alternative-choice offers. He points to section 998, subdivision (b)(1), which provides, "If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." Plaintiff claims these provisions

demonstrate that a 998 offer must be "simple and straightforward enough such that it is a purely ministerial act for a court clerk to enter judgment on it," but "the inclusion of complex, questionably valid options . . . cannot be simply entered as judgments because they . . . require further litigation to determine their value. [Citation.] In fact, . . . nothing precludes an especially opportunistic litigant from making five, eight, or even ten such options — all of which the offeree and the court will have to evaluate." Plaintiff's argument is unpersuasive because it confuses entirely different judicial tasks undertaken at different times and under different circumstances.

To begin, we have never held that an offer must be "simple." If an accepted offer along with proof of acceptance is filed with the court, the judge or clerk "shall enter judgment" "in accordance with the terms and conditions stated." (§ 998, subd. (b)(1).) That entry of judgment is a straightforward ministerial act. Before entering judgment, the statute does not require, or authorize, the court to adjudicate possible disputes over the terms of the 998 offer. (See *Bias v. Wright* (2002) 103 Cal.App.4th 811, 819.) If a dispute later arises over the terms of an offer that has been accepted and judgment entered, the court may then be called upon to determine the validity of the settlement contract and interpret its terms. In making that determination, the court construes the parties' own *agreed-upon*

terms to determine the rights and obligations legally created by the parties' contract of settlement.[10]

### B. An Offer Requiring a Selection Between Distinct Sets of Terms for Acceptance Is Not Inherently Uncertain nor Does It Defeat the Purpose of Section 998

"When the language of section 998 does not provide a definitive answer for a particular application of its terms, courts may consult and apply general contract law principles. Because the process of settlement and compromise is a contractual one, such principles may, in appropriate circumstances, govern the offer and acceptance process under section 998." (*Martinez, supra,* 56 Cal.4th at p. 1020.) General contract principles will be controlling so long as they "neither conflict with the statute nor defeat its purpose." (*T. M. Cobb Co., supra,* 36 Cal.3d at p. 280.) When application of a general contract principle would defeat the purpose of the scheme, a rule specifically tailored to

---

[10] For example, in *Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, the plaintiff accepted his former employer's hastily drafted 998 offer and a judgment "encapsulating" its terms was entered. (*Id.* at p. 623.) Later, a dispute arose between the parties as to the meaning of its terms and plaintiff filed a motion to enforce the judgment. (*Id.* at p. 624.) Based on its "construction of the contract, and thus its interpretation of the judgment," the trial court entered an order favorable to plaintiff. (*Ibid.*) Affirming this postjudgment order, the Court of Appeal confirmed that courts should "apply general contract principles to the interpretation of a section 998 judgment. [Citation.] ' "[A] stipulation or consent judgment, being regarded as a contract between the parties, must be construed as any other contract." ' " (*Ibid.,* quoting *Lanyi v. Goldblum* (1986) 177 Cal.App.3d 181, 184, fn. 3.)

the section 998 context may be necessary. For example, *T. M. Cobb Co.* applied general contract principles to hold that 998 offers are revokable at any time before acceptance or expiration, because that interpretation increases the chances for settlement. (See also *Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154 [applying the general rule in another section 998 context].) By contrast, *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 272 declined to apply a general contract principle that would inhibit settlement negotiations. (See also *One Star, Inc. v. STAAR Surgical Co.* (2009) 179 Cal.App.4th 1082 [adopting a specific 998 rule to encourage offers and increase chances of settlement].)

Although the application of general contract principles will not always suffice in the section 998 context, a well-established principle is serviceable here to achieve the Legislature's aim. An "offer may contain a choice of terms from which the offeree is given the right to make a selection in his acceptance," and the "acceptance of one alternate proposition constitutes a binding contract." (*H.S. Crocker*, *supra*, 148 Cal.App.2d at p. 645; see also Rest.2d Contracts, § 30, com. c, p. 85; 1 Williston on Contracts, *supra*, § 4:22, pp. 532–539.) The 998 offer at issue neatly fits this description. Plaintiff had the choice between two self-contained, mutually exclusive sets of contractual terms: a lump sum payment or a more complex alternative that required proof of particularized damages claimed and a framework for resolution of any disagreements over the adequacy of proof. As presented, if plaintiff wished to accept either alternative, counsel was to check a box next to the set of terms accepted and sign the offer. The offer did not give plaintiff the right to mix and match terms to create a new set of his preferred alternatives. On these facts, his statutorily

compliant acceptance of either set of the terms presented would have formed an enforceable contract between the parties and been filed with the court for entry of judgment as the statute provides.

Echoing the Court of Appeal's analysis, plaintiff contends that a specific rule is needed in these types of section 998 cases. He insists that a 998 offer containing alternative sets of terms presented for acceptance is inherently uncertain and precludes accurate valuation either by the offeree when considering it or by the trial court when later comparing the value of a rejected offer to the ultimate judgment or award. He repeats the claims that alternative-choice 998 offers will discourage settlement, invite gamesmanship, and impose burdens on the trial courts. His arguments are unpersuasive.

### 1. *The Court of Appeal's Uncertainty Analysis*

Section 998, subdivision (c) effectuates the policy of encouraging settlement by creating a strong financial incentive for parties to make reasonable settlement offers and a strong financial disincentive for them to reject such offers. (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.) This incentive structure only works, however, if an offer's worth can be reasonably calculated when it is being considered by the offeree, as well as in hindsight when the trial court compares the value of a rejected offer and the ultimate judgment or award. Our lower courts have developed a two-part test to determine if an offer's terms are sufficiently certain for such purposes (see *Fassberg, supra,* 152 Cal.App.4th at p. 764; see also *Valentino,*

*supra*, 201 Cal.App.3d at pp. 700–701), a test we adopt as our own.[11]

A 998 offer's terms must be sufficiently certain in two ways to trigger cost shifting. First, the terms must enable the offeree to meaningfully "evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 (*Berg*).) Without the ability to judge the concrete value of an offer, the offeree cannot make a practical decision whether to accept it.

Second, the terms presented must allow a court to subsequently determine whether the secured judgment or

---

[11]    Lower courts have also held that a valid 998 offer must be *unconditional*. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799.) Additionally, it has been held that a rejecting offeree may avoid cost-shifting penalties if it can show the offer was not made in *good faith*, because it had no reasonable prospect of acceptance. (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924.) *Licudine* explained that there are two aspects of the good faith inquiry. First, whether the offer "was . . . within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known." (*Id.* at pp. 924–925.) Second, whether the offeror knew "that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the 'offer [was] a reasonable one,' such that the offeree had a 'fair opportunity to intelligently evaluate the offer.' " (*Id.* at p. 925.) These two considerations allow the court to assess whether the offer was reasonable and thus validly made. (*Id.* at pp. 924–925.) Plaintiff has not alleged the offer at issue was conditional or made in bad faith, so we have no occasion to consider the soundness or test the application of these doctrines here.

award is more favorable than the offer.  The availability of the cost-shifting penalty depends on whether the offeree failed to exceed the terms it rejected.  (*Fassberg, supra*, 152 Cal.App.4th at p. 764.)  Thus, in deciding whether to impose the penalty, the court must be able to place a fair value on the rejected offer.  If a settlement offer "contains terms that make it 'exceedingly difficult or impossible to determine the value of the offer[,] . . .  a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff.  Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting under . . . section 998.' " (*Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 295.)  Further, under both prongs of the certainty inquiry, the valuation of the offer is measured as of the time it was made "and without the benefit of hindsight." (*Valentino, supra*, 201 Cal.App.3d at p. 698.)  On a motion to strike or tax costs, the burden is on the offeror to prove the offer's terms were sufficiently certain or specific. (*Khosravan*, at p. 294.)

There is nothing inherently uncertain about asking an offeree to evaluate alternative sets of settlement terms before deciding whether to accept either or neither of them.  The Court of Appeal agreed that an alternative-choice offer may clear this first uncertainty hurdle. (*Gorobets, supra*, 105 Cal.App.5th at p. 928.)  However, according to the Court of Appeal, the trial court's postjudgment task of comparing the value of alternative-choice offers against a secured judgment is not so easy.  For that reason, it interpreted section 998 to bar alternative-choice offers categorically, even though the statute is silent on the subject.  To explain its conclusion, the court posed the following hypothetical.

16

The court assumed a situation in which "an offeror makes two simultaneous offers to settle a case — one to pay a lump sum of $100,000 and another to pay a lump sum of $200,000." (*Gorobets*, *supra*, 105 Cal.App.5th at p. 928.) If the "simultaneous offers" were rejected and "the jury returns a verdict for the offeree of $150,000," the court asked rhetorically: "how is the court to assess whether the offeror did better or worse than the verdict?" (*Id.* at p. 929.) The court expounded: "The verdict is *between* the $100,000 and $200,000 offers, and is accordingly worse for the offeror than one offer but better than the other. Because the offers were made at the same time, a court cannot rely on the timing of the offers to dictate which is the operative one." (*Ibid.*) Thus, the court concluded alternative-choice offers, while "not practically unprecedented," are "legally ineffective [for cost-shifting purposes] under section 998." (*Id.* at p. 930.)

The hypothetical is problematic in several ways and appears to have skewed the Court of Appeal's analysis. First, it is difficult to imagine that, all things being equal, an offeree would select a $100,000 offer over a $200,000 one. To be serviceable, the hypothetical would have to also assume that the offer contained additional terms in one or both of the alternatives to distinguish between them. We will not speculate or opine on whether and how such an additional, unarticulated level of complexity might render one or both of the proposed alternatives insufficiently specific. Here, we encounter a single offer by a defendant that proposed a settlement based on plaintiff's choice between two distinct alternatives.

Another difficulty with the court's hypothetical is that it considers whether the achieved result was better or worse "for

the offeror." (*Gorobets*, *supra*, 105 Cal.App.5th at p. 929.) This approach rhetorically demands an answer to the wrong question. In order to allow cost shifting in a case like this one, the court must consider whether the judgment or award secured was less favorable *than the offer* that was rejected or allowed to lapse. (§ 998, subds. (c)(1), (d).) If the result ultimately secured by a rejecting offeree does not exceed the value of the offer, the court may impose cost shifting.

The Court of Appeal's analysis was also flawed to the extent it characterized Jaguar's proposal as "two *simultaneous* offers." (*Gorobets*, *supra*, 105 Cal.App.5th at p. 927, italics added.) Viewing it in this way led the Court of Appeal to conclude that simultaneous 998 offers are categorically too uncertain because, when "offers [are] made at the same time, a court cannot rely on the timing of the offers to dictate which is the operative one." (*Id.* at p. 929.) We reject the characterization of Jaguar's proposal as presenting "two simultaneous offers" because it implies Gorobets could have accepted *both* sets of terms if he wished, which was clearly not the case. The offer expressly required a choice between the alternatives *as the only permissible form of acceptance.* (See Civ. Code, § 1582 ["If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to . . ."].) As explained above, we hold that, consistent with general contract principles, an offer that permits an offeree to accept by selecting between two discrete alternatives is best understood as a single offer for section 998 purposes. Viewing it as a single offer, however, should not inhibit a trial court from independently analyzing each alternative set of terms even though they are presented

18

concurrently.[12]

In ruling on a contested section 998 motion involving an alternative-choice offer, the court's first step is to determine whether the alternative-choice 998 offer is clearly presented and calls for the offeree to select between expressly delineated alternative choices. In other words, the offer must be structured to present an unambiguous choice between the alternative sets of terms. Under general contract principles, a proposal that sets out an extensive menu of terms among which an offeree may pick and choose, or that requires an offeree to supply a term not specified in the offer may provide the basis *for an enforceable contract* if the terms are made definite through an acceptance. (See, e.g., *Keller v. Ybarru* (1853) 3 Cal. 147; *Hylton Flour Mills v. Bowen* (1933) 128 Cal.App. 711, 714.) "In such cases the offer does not fail for indefiniteness, but no contract is made by an attempted acceptance which does not supply the term as indicated. [Citation.] The offer assents in advance to the term chosen or filled in by the offeree." (Rest.2d Contracts, § 30(1), com. c, p. 85; see also, 1 Williston on Contracts, *supra*, § 4:22, pp. 532–539.) This general approach permits parties to continue to negotiate until they have arrived at an ultimate, and mutually acceptable, resolution. The section 998 context is

---

[12] Indeed, the Court of Appeal adequately demonstrated the feasibility of this approach when, after holding "simultaneous offers" are categorically invalid under section 998 (*Gorobets*, *supra*, 105 Cal.App.5th at p. 928, fn. 9; see *id*. at pp. 927–928), the court individually analyzed the alternatives, concluding the lump sum alternative was sufficiently certain while the more complex dispute resolution alternative was not (*id*. at pp. 931, 934).

somewhat different, however, because it involves a specific kind of offer.

A valid 998 offer must be definite and specific before it may meet the statutory requirements for cost shifting. A 998 offer may very well fail *for cost-shifting purposes* due to its lack of specificity from the trial court's perspective. A court that later considers whether a rejected offer was exceeded must be able to identify precisely what terms were rejected, not left to contemplate how an offer might have ultimately been construed, depending on an offeree's theoretical choice among an array of available possibilities. In relying on a rejected or lapsed 998 offer to justify cost shifting, the court looks to whether a definitive and enforceable offer was made, by whom, when, and whether a rejecting party later failed to secure a more favorable outcome. It is the offeror's burden to demonstrate the validity of the offer under section 998. An offer may be held sufficiently certain if it clearly delineates the specific terms attributable to each choice; the proposed choices are mutually exclusive, so that only one choice can be selected; and the offer clearly communicates how the offeree's acceptance is to be conveyed.

If structural validity of the offer as a whole is established, the court will then separately consider whether each alternative presented is sufficiently certain to permit a fair valuation at the time the offer was made. If the court can place a fair value on at least one of the proposed alternatives, and a rejecting offeree secures a judgment or award that exceeds the highest valued, valid alternative, section 998 does not permit cost shifting, and the general rule under section 1032 applies. If, on the other hand, the value of the secured judgment or award does not exceed the one valid alternative with the highest value, the cost-

shifting penalty is permitted in favor of the offeror whose offer was rejected and not ultimately exceeded. It matters little if the offeree also rejected a set of valid settlement terms of lower value. In the end, the offeree had the opportunity to settle the case under a higher value set of terms that were sufficiently certain, thus valid. An offeree who rejects that valid set of terms and elects to continue with litigation has placed itself in precisely the situation section 998 was designed to disincentivize. Requiring the offeree to obtain a better result than the highest value set of valid terms is most consistent with the text and purpose of the statute.

### 2. *Alternative-choice Offers Do Not Undermine or Defeat the Purpose of Section 998*

Plaintiff's additional arguments assert that permitting an alternative-choice offer defeats section 998's intended purposes. Those additional arguments fail. Permitting alternative-choice offers is consistent with the underlying policy permitting cost shifting. Doing so increases the likelihood of an early settlement by providing the parties with the flexibility to explore multiple avenues toward resolution at once, rather than forcing them into a more time-consuming process that requires them to make and evaluate offers one at a time. In this regard, our oft-cited maxim, "[t]he more offers that are made, the more likely the chance for settlement" (*T. M. Cobb Co.*, *supra*, 36 Cal.3d at p. 281), can be augmented by recognizing that the more offers that are made *early*, the more likely the chance for settlement *early*, which in turn will diminish the economic waste associated with needlessly prolonged litigation. (See *Martinez, supra*, 56 Cal.4th at p. 1019.)

Additionally, the ability to place clear alternatives on the table affords the parties "the flexibility to fashion settlements on terms best suited to the circumstances of a particular action." (*Berg, supra,* 120 Cal.App.4th at p. 732.) In Song-Beverly Act cases, for instance, permitting manufacturers to offer mutually exclusive settlement alternatives is consistent with that Act's remedy structure, which allows consumers to elect between restitution or replacement of their defective vehicle. (Civ. Code, § 1793.2, subd. (d)(2).) This is not to say, however, that the validity of an alternative-choice 998 offer depends on the remedy structure of the relevant underlying statute. Regardless of the nature of the claims asserted, parties may often wish to craft their settlements based on the unique set of circumstances and limitations they face. Alternative-choice offers allow the parties to communicate and explore those preferences more rapidly and efficiently, potentially shortening the path to common ground. Touching on another voiced concern, all 998 offers remain revocable before acceptance or expiration. So authorizing alternative-choice offers will not undermine the goal of properly compensating injured parties. Parties will still be able to change course as necessary if they "discover new evidence bearing on the plaintiff's injuries or the defendant's culpability." (*Martinez, supra,* 56 Cal.4th at p. 1021.)

Plaintiff urges that flexibility is beneficial, but it cannot be embraced "to the detriment of clarity and finality." He seeks support for his position in *Madrigal* where we stated that "section 998 is specifically designed to limit parties' flexibility and to encourage certain conduct: the making and acceptance of reasonable settlement offers with an eye toward reducing costs. . . . This limitation on flexibility is a feature of the scheme, not a bug." (*Madrigal, supra,* 17 Cal.5th at p. 610.) The

purported trade-off between flexibility and clarity that plaintiff describes is not implicated here. As noted, offers containing settlement alternatives are valid for cost-shifting purposes only if the offeror can establish sufficient certainty in two ways: (1) the offer is clearly structured to present a specific choice between mutually exclusive and clearly defined sets of settlement terms; and (2) at least one set of terms is capable of valuation at the time of the offer. (See pp. 15–16, *ante*.) Thus, the additional flexibility afforded by a well-drafted alternative-choice offer does not necessarily come at the expense of clarity. An offeror who does not present a clear offer risks a later finding that the offer presented was invalid. The statement plaintiff cites from *Madrigal* does not conflict with this conclusion. *Madrigal* was focused on an entirely different type of limitation on settlement flexibility. Plaintiff there had asked the court to construe section 998 to permit the cost-shifting penalty only if the case ends *after trial*. (*Madrigal*, at pp. 609–610.) We rejected such a reading because "[s]ection 998 purposely places on the party who rejects a reasonable offer the risk that changed circumstances might lead to a worse result." (*Id*. at p. 610.) The proposed holding here does not undermine this principle but strengthens it. If an alternative-choice 998 offer is properly structured to present a clear choice and at least one alternative is capable of valuation, the offeree continues to bear the risk incurred by rejecting it.

Echoing concerns raised by the Court of Appeal (see *Gorobets, supra*, 105 Cal.App.5th at p. 929), plaintiff further posits that authorizing alternative-choice 998 offers will increase gamesmanship by offerors who will seek to inundate offerees in a sea of alternatives, forcing them within 30 days to examine the value of each choice, the anticipated value of their

claims, and the likelihood that a court might determine one or more of the choices is valid for cost-shifting purposes.[13]  At the outset, it should be noted that a baffling "sea of alternatives" scenario bears no resemblance to the facts here.  Plaintiff was given only two choices to consider:  a simple lump-sum amount

---

[13]  Plaintiff also contends this result would be at odds with the Legislature's intent when it replaced former section 997 with section 998.  Former section 997 had allowed either nine or 10 days for consideration of statutory offers of compromise. (Stats. 1969, ch. 570, § 1, pp. 1200–1201.)  In support of this argument, plaintiff requested that the court take judicial notice of numerous documents related to the passage of section 998 in 1969 as well as materials related to legislative amendments to the statute in 1969 and 1971.  In his briefing, plaintiff cites only five documents from among those materials.  We deny his request for judicial notice of materials not cited in his brief "on the ground plaintiffs failed to explain their relevance to the dispositive issues on appeal." (*Madrigal*, *supra*, 17 Cal.5th at p. 609, fn. 10.)  Among the cited materials are postpassage letters from the bills' authors to the Governor explaining the author's personal views as to the meaning and purpose of the legislation. We deny the request for judicial notice of these materials because the "views of individual legislators as to the meaning of a statute rarely, if ever, are relevant . . . ." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9; see also *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 845.)  Lastly, as to the two remaining documents cited by plaintiff in his briefing regarding Assembly Bill No. 1756 of 1969, we reiterate the guidance that we provided in *Madrigal*:  "[A] court will take judicial notice of the legislative history of a statute to ascertain the statute's purpose and meaning if the statute is ambiguous. [Citation.]  But a 'request for judicial notice of published material is unnecessary. Citation to the material is sufficient.'  [Citation.]  As we did in *Quelimane*, we treat 'the request for judicial notice as a citation to those materials that are published.' " (*Madrigal*, at p. 609, fn. 10.)

or a more involved dispute-resolution alternative. At no point did the plaintiff seek additional time to consider the 998 offer or object that the choice of terms was too complex to consider within the statutory period. Indeed, the time records filed in support of plaintiff's attorney fees motion recorded only 0.2 hours billed by his counsel to review and analyze defendant's alternative-choice 998 offer during the 30-day window. There is no indication plaintiff was unreasonably pressed for time or bamboozled by a morass of alternatives.[14]

In addition, our lower courts have already developed safeguards to police a situation in which an offeror attempts to deluge an offeree with an array of choices that cannot reasonably be evaluated and considered within the statutory period. A party who makes confusing offers attempting to overwhelm an opponent, or in an effort at gamesmanship, rather than genuinely attempting to reach a settlement, risks that its "offer" will be found to have been put forward in bad faith. (See p. 15, fn. 11, *ante*.) Also, whenever offerees face a situation in which they lack the ability to reasonably assess a 998 offer within the statutory period, they are free to request an extension

---

[14] It is, of course, conceivable that an offer presenting the offeree with more than two discrete sets of choices for acceptance *could* satisfy section 998 and bring the cost-shifting penalty into play. Such a scenario is not presented here and we express no opinion on the validity of such an offer in the abstract. However, we reemphasize that any set of settlement terms in an alternative-choice 998 offer that party seeks to enforce must be *valid*, meaning the offer as a whole must pass the structural certainty requirements set forth here and the alternative itself must be independently capable of an accurate valuation, both by the offeree at the time it was made and by the trial court in hindsight.

of time and/or informal discovery from the offeror in order to obtain needed information, and any refusal on the part of the offeror may have "viewed as potent evidence that [the] offer was neither reasonable nor made in good faith." (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 451; see also *Lewis v. Ukran* (2019) 36 Cal.App.5th 886, 897–898; *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1114.)

Plaintiff also contends that alternative-choice 998 offers will inhibit settlements by placing offerees in a "Catch-22" because they still might face section 998 penalties regardless of whether they accept one choice of terms or reject them all. Plaintiff again turns to *Madrigal* for support. *Madrigal* held that a plaintiff who rejects a 998 offer or allows it to expire, but later, before trial, agrees to settle for an amount less favorable than the 998 offer, does not necessarily avoid cost shifting under the statute. (*Madrigal, supra*, 17 Cal.5th at p. 599.) As we observed, "the terms of section 998[, subd. ](a) are clear and mandatory. Costs generally allowable under section 1032 'shall be withheld or augmented' as the statute provides. (§ 998[, subd. ](a).) This straightforward directive requires that the court adjust generally recoverable costs if section 998's conditions are met. Nowhere does section 998[, subd. ](a) require that the case be resolved *by trial* before it comes into play. Nor does it exclude from its reach cases resolved by a postrejection, but pretrial, settlement." (*Id.* at p. 604.) The parties agreeing to such a pretrial resolution are free to address the payment of costs in the terms of their settlement. "[I]f [the] settling parties do not resolve the allocation of costs, section 1032 authorizes the [trial] court to determine and award them" as modified by the application of the cost-shifting mechanism under section 998, subdivision (a). (*Madrigal*, at p. 606.)

According to plaintiff, if we authorize alternative-choice 998 offers, *Madrigal* opens the door to the possibility of cost shifting whenever an offeree accepts one set of terms because the offeror might later argue the offeree failed to obtain a more favorable result than the value of one or more of the "rejected" sets of terms. Plaintiff's argument, however, is fundamentally undermined by our holding that Jaguar's proposal was a single alternative-choice offer, not two simultaneous offers that both could be accepted.

To reiterate, the alternative-choice offer at issue is best understood under general contract principles as an invitation to the offeree to enter into a contract under one of two equally acceptable sets of terms presented by the offeror. If either of the alternatives is acceptable, the offeree may, under the express terms of the offer, convey its assent either in a writing of its own, or by choosing the set of terms it selects and signing the offer. When a clear choice proposed by the offeror is accepted, a contract to settle is formed based solely on the terms accepted. If none of the alternatives are acceptable to the offeree, or the offeree allows the offer to expire, the offer as a whole is rejected.

This understanding of a binary choice between accepting or rejecting a single offer not only aligns with general contract law but is also consistent with the structure and operation of the statute itself. Section 998, subdivision (b)(1) directs that if "the offer is *accepted*," the court is to enter judgment in accordance with the accepted terms. (Italics added.) Conversely, subdivisions (c)(1) and (d) trigger cost-shifting penalties when "an offer made" is "not accepted" and "a more favorable judgment or award" is not later achieved by the rejecting offeree. The purpose of section 998 is best ensured by a clear structure

27

in which a qualifying offer is either accepted, rejected, or withdrawn. Plaintiff's premise that alternative-choice 998 offers can be *both* accepted and rejected would upend this clear statutory structure and lead to absurd results, in which the underlying litigation is purportedly ended by "settlement," but the parties can continue to argue over costs. The whole goal of the statutory structure is to end disputes, not prolong them.[15]

Plaintiff next urges that permitting alternative-choice offers will result in a waste of judicial resources because trial courts will be forced to assess the validity and value of *every* alternative presented and compare each one to the value of the judgment or award ultimately secured. His concerns are overstated. It has long been established that multiple offers made ad seriatim are permitted and may require trial court review to determine the bounds of cost shifting. (See *Martinez*, *supra*, 56 Cal.4th at p. 1023.) Asking trial courts to review alternative-choice offers should not pose meaningfully different

---

[15] Even if we were to accept plaintiff's argument that *Madrigal* creates this potential Catch-22 nightmare scenario when applied to alternative-choice 998 offers, he would not have been subjected to such a predicament here if he had accepted either one of the alternatives. Under either set of terms, defendant was willing to agree to waive its costs and either pay $7,500 for plaintiff' attorney fees and costs or, at plaintiff's election, have a reasonable amount for fees and costs to be determined by the court pursuant to the Act with the stipulation that plaintiff would be the prevailing party. (See Civ. Code § 1794, subd. (d).) As we underscored in *Madrigal*, if the parties agree to a particular allocation of costs as part of their settlement agreement, the court is not authorized to determine and award them differently from the contractual terms to which they agreed to be bound. (*Madrigal*, *supra*, 17 Cal.5th at pp. 605–606.)

issues in this regard. Furthermore, under our holding, cost-shifting penalties can only be triggered by a 998 offer in which (1) the rejected or lapsed offer clearly presents a choice between two distinct sets of terms, either of which the offeree may accept as a settlement; (2) *at least one* set of alternative terms is sufficiently certain to be fairly valued; and (3) the offeree fails to obtain a judgment or award that exceeds the value of a valid alternative. Once it finds that those requirements are established, the trial court's task is concluded. There is no need for the court to evaluate the validity or value of any other alternative contained in the offer. Here, for example, the trial court's job could not have been more straightforward in light of the $85,000 lump sum alternative. It could readily assess the value of that alternative and compare it with the judgment obtained.

Plaintiff claims authorization of alternative-choice offers will compound the work of trial courts in other ways because it will incentivize "opportunistic litigants" to "jam as many complex settlement options" into the offer as possible in the hope that at least one might be valid. Then, according to plaintiff, if one of those complex alternatives is *accepted*, courts are more likely to be pulled into postjudgment disputes over the meaning of the parties' settlement terms, leading to further litigation. That scenario is not presented here. The question in this case is whether a *rejected* alternative-choice offer can ever be sufficiently certain to trigger cost-shifting penalties. Furthermore, concerns as to postjudgment enforcement of complex settlement agreements are not unique to the section 998 context. If the terms of a judgment based on an accepted 998 offer are later disputed, a court would resolve that dispute just as it would go about interpreting the terms of any other

contract. (See *Fassberg*, *supra*, 152 Cal.App.4th at p. 764.) If, as the drafter of the proposal, the offeror presents an unclear offer, any ambiguity would ordinarily be construed against him. (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86.) Such a possibility provides an incentive for a section 998 offeror to take care in presenting a clear offer, promoting the goals of the statutory scheme.[16]

To summarize, we hold that a statutory offer of compromise presenting an offeree with a choice between two alternative sets of terms is not categorically barred by section 998. When asked to determine the validity of an alternative-choice 998 offer on a motion for cost shifting, the trial court first determines whether the offer is structured to make the provided sets of terms clear and the manner of selection between them

---

[16] Plaintiff requests that the court take judicial notice of the Orange County Superior Court's register of actions in *Kirzhner v. Mercedes Benz USA, LLC* (Super. Ct. Orange County, 2020, No. 30-2014-00744604-CU-BC-CJCM). Plaintiff asserts the register of actions is a proper subject of judicial notice as an official court record (Evid. Code, § 452, subd (d)), and it is relevant because it "exemplifies the additional litigation created by accepting a complex settlement offer — i.e., the type of offer inherent in a simultaneous offer." For its part, defendant requests that we judicially notice several trial court records in *Assatourian v. Hyundai Motor America* (Super Ct. L.A. County, 2024, No. 19STCV32842) and *Hale v. Hyundai Motor America* (Super. Ct. Orange County, 2023, No. 30-2020-01129492) on the grounds that it provides relevant "examples of multiple-option 998 offers have been accepted in Song-Beverly actions." We deny both requests because the material identified is not relevant to the issues presented on appeal. The mere existence of litigation in assertedly similar cases, or the entry of settlement judgments in other cases, does not assist in resolving the questions addressed here.

evident. In this regard, the 998 offer must delineate the specific terms attributable to each choice presented and provide that the offeree must affirmatively choose one or the other set of terms by way of acceptance. Once it determines that the alternative-choice 998 offer is sufficiently clear in structure, the trial court then considers whether either set of terms is sufficiently certain to permit valuation at the time the offer was made and whether that value of at least one valid alternative is higher than judgment or award ultimately achieved. The rebuffed offeror seeking cost shifting bears the burden of showing its 998 offer was valid, meaning it was sufficiently certain.

## III. DISPOSITION

We affirm that portion of the judgment affirming the trial court's award. We reject and overturn its holding that section 998 categorically prohibits alternative-choice offers. The parties shall bear their own costs on appeal.

**CORRIGAN, J.**

**We Concur:**
**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**FEUER, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Gorobets v. Jaguar Land Rover North America, LLC

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 105 Cal.App.5th 913
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S287946
**Date Filed:** August 6, 2026

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Monica Bachner

_____

**Counsel:**

Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter, Joseph V. Bui, Laura G. Lim; Knight Law Group, Radomir R. Kirnos; Wirtz Law and Richard M. Wirtz for Plaintiff and Appellant.

Bowman and Brooke, Brian Takahashi, Bryan A. Reynolds, Richard L. Stuhlbarg; Nelson Mullins Riley & Scarborough, Jennifer T. Persky and Robert L. Wise for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cynthia E. Tobisman
Greines Martin, Stein & Richland LLP
6420 Wilshire Boulevard, Suite 1100
Los Angeles, CA 90048
(310) 859-7811

Robert L. Wise
Nelson Mullins Riley & Scarborough LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
(804) 533-2900